IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re MTE HOLDINGS LLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 19-12269-CTG |
| Debtors. | : | (Jointly Administered) |
| | : | |
| THE ALLAR COMPANY, | : | |
| | : | |
| Appellant, | : | |
| v. | : | Civ. No. 21-1297-LPS |
| | : | |
| MTE HOLDINGS LLC, *et al.,* | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM ORDER**

1.      Before the Court is the emergency motion for stay pending appeal (D.I. 4)

("Emergency Stay Motion") filed by appellant The Allar Company ("Allar"), which seeks a stay of

the *Bankruptcy Court's Findings of Fact, Conclusions of Law, and Order Confirming the Sixth*

*Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated*

*Debtors* (B.D.I. 2590) (the "Confirmation Order")[1] pending Allar's appeal of the Bankruptcy

Court's ruling ("Ruling") overruling Allar's objection to confirmation of the plan of reorganization.

Having considered Allar's supplement (D.I. 7), the responses to the Emergency Stay Motion (D.I.

10, 12), and Allar's reply in further support (D.I. 14), the Court will deny the Emergency Stay

Motion (D.I. 4), for the reasons set forth herein.

2.      **Background**.  On October 22, 2019, MTE Holdings LLC ("MTE") filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  Certain of MTE's affiliates (together

with MTE, the "Debtors") filed voluntary petitions thereafter.

---

[1] The docket of the Chapter 11 cases, captioned *In re MTE Holdings LLC*, Case No. 19-12269-CTG
(Bankr. D. Del.), is cited herein as "B.D.I. ___."

3.      The Debtors are parties to various mineral rights leases that authorize them to drill for oil and gas in exchange for the payment of royalties on the oil and gas they extract from the land.  Certain of the lessors, known as "interest holders," filed proofs of claim, alleging that they were owed amounts for royalties that were due and owing as of the petition date.

4.      On July 9, 2021, Debtors objected to certain proofs of claim (B.D.I. 2334) ("Claim Objection") filed by the interest holders.  The interest holders asserted that, under Texas law, their claims for unpaid prepetition royalties were secured by the proceeds of the oil and gas that the debtors sold.  The Debtors generally did not dispute that they owed the interest holders unpaid royalties, but they disagreed with the interest holders that those claims were secured.

5.      On August 18, 2021, the Bankruptcy Court issued a Memorandum Opinion rejecting the position of the interest holders.  *See In re MTE Holdings LLC*, 2021 WL 3668222 (Bankr. D. Del. Aug. 18, 2021) (the "Opinion").  As the Bankruptcy Court explained, the parties' dispute turned on a question of law – the meaning of Texas Business and Commerce Code § 9.343 – a non-uniform provision of the Uniform Commercial Code enacted by the Texas legislature to protect the rights of interest owners.  The Bankruptcy Court concluded that the interest holders' claims were unsecured because the language of that statute did not create a security interest covering the claims that the interest holders actually held.  In the absence of case law from the Texas courts offering a definitive construction of that provision, the Bankruptcy Court concluded that the language of the statute creates a lien only to secure the purchase price of produced oil and gas.  Because an operator does not pay the royalty interest holder for produced oil and gas (except in certain circumstances not shown to be present here), the Bankruptcy Court held that the holders of royalty interests did not hold claims that were secured by operation of § 9.343.  While the Bankruptcy Court acknowledged that this construction created the anomalous circumstance in which a statute intended to protect the holder of royalties did not (at least on these facts) accomplish that purpose, the Bankruptcy Court's

2

reading of the existing statute was reinforced by a subsequent statutory amendment (which became effective on September 1, 2021, after the events at issue here) that would solve the "problem" created by the statutory language.

6.      The chapter 11 cases have been complex and contentious.  The Debtors proposed their sixth amended plan of reorganization on September 3, 2021.  (B.D.I. 2588-1) ("Plan")  The Plan contemplated a sale of substantially all of the Debtors' assets to Maple Energy Holdings, LLC (the "Buyer").

7.      Allar was not a party to the claim dispute that gave rise to the Opinion holding that those who are owed unpaid royalties are unsecured creditors.  Allar did, however, object to confirmation of the Debtors' plan of reorganization.  (B.D.I. 2457)  In its objection, Allar made two arguments.  First, Allar argued that, under Texas law, royalty owners retain an ownership interest in the share of production attributable to their royalty interest.  (*Id.* at 5-6)  Second, Allar argued that the claims for unpaid royalties are secured claims, so the Plan violates the "absolute priority rule" by not allowing royalty owners, such as Allar, priority as a secured creditor to receive proceeds of oil and gas sales.  (*Id.* at 7)  By the time of the confirmation hearing, however, the second point had been rejected by the Bankruptcy Court in the Opinion.

8.      In evaluating Allar's subsequent motion for stay pending appeal filed below, the Bankruptcy Court noted that Allar's ownership argument differs slightly from the issue of law decided the in Opinion: Allar argues not that it is a creditor whose claim for unpaid royalties is secured by the production or its proceeds, but rather that the production is actually owned by Allar – and, presumably, that any proceeds would be held in a resulting trust for Allar's benefit. *See In re MTE Holdings LLC*, 2021 WL 4203339 (Bankr. D. Del. Sept. 15, 2021) ("Stay Opinion").  "To prevail on that argument, however," the Bankruptcy Court noted, Allar was "required to present

3

evidence – namely, a factual showing that the assets that the debtors intend to sell includes production or its proceeds that can be traced to Allar's share." *Id*. at *2.

9.      On September 2-3, 2021, the Bankruptcy Court held a hearing to consider confirmation of the plan. (*See* D.I. 14-1 ("9/2/2021 Tr."); D.I. 14-2 ("9/3/2021 Tr.")) At the confirmation hearing, the Bankruptcy Court admitted into evidence the declaration of Scott Davido, the Debtors' Chief Restructuring Officer, that set forth the factual record in support of plan confirmation. Although Davido testified live at the confirmation hearing and was available for cross-examination (9/2/2021 Tr. at 13-38), Allar elected not to cross examine him (*see id*. at 38).

10.     While Allar attached certain materials to its brief in opposition to confirmation, it declined to seek to introduce any of those materials into the evidentiary record at the confirmation hearing. Indeed, after the Bankruptcy Court received "no audible response" to the question "[i]s there any other party . . . that wishes to present evidence in connection with the confirmation hearing" (*id*. at 52), the Bankruptcy Court went so far as to point out that the royalty interest holders had not sought to present any evidence to back their opposition to confirmation:

> THE COURT: So I did obviously see there were a number of interest holders that submitted witness lists and the like. And just to be clear, none of that is – that's all required to be submitted in order to give folks the opportunity to present it into evidence, but it's not admitted into evidence in the absence of a party moving it into evidence during the proceeding. So it's obviously up to the parties whether they wish to or not.
>
> But let me ask the question one more time to see if there's any other party that wishes to present evidence in opposition to confirmation of the plan.
>
> (No audible response).

(*Id*. at 53) When none of the royalty interest holders (many of which filed oppositions to confirmation) rose to be heard in opposition to plan confirmation, the Bankruptcy Court asked whether "the silence I'm hearing [is] a decision to rest on the papers, or are the interest holders no

longer asserting these objections?" (*Id.* at 95)  Counsel for Allar responded that they were resting

on their pleadings: "[T]hat's what we're doing, resting on the pleadings, Judge." (*Id.* at 97)

11.     When the confirmation hearing continued the following day, the Bankruptcy Court

overruled Allar's objection, as well as those of several other holders of royalty interests. (9/3/2021

Tr. at 48-52)  In doing so, the Bankruptcy Court noted the "royalty claimant holders were each

given the opportunity to present evidence in support of their objections and to advance argument in

[support of] their objections.  They've all declined to do so and elected to rest on the objections they

filed." (*Id.* at 49)  The Bankruptcy Court observed, thus, "there is no evidence in the record in

support of any of those objections." (*Id.*)  As "a matter of law, there is nothing in those pleadings

that provides [a reason why] this plan cannot be confirmed." (*Id.*)

12.     The Bankruptcy Court described its prior ruling that the interest holders do not hold

secured claims and addressed the argument that any unpaid royalties are not property of the estate

as "the flip side of the coin from the argument that those creditors hold a security interest in certain

proceeds and, thus, are secured claims." (*Id.* at 51)  The Bankruptcy Court, accordingly, indicated

that it would confirm the plan and enter the Confirmation Order.

13.     In order to avoid a circumstance in which a party is required to demand that an

appellate court rule immediately on a motion for a stay, the Bankruptcy Rules provide that "[a]n

order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless

the court orders otherwise." Fed. R. Bankr. P. 3020(e).  Aware that the proposed confirmation

order contained language (in paragraph 72) that might shorten the 14-day stay provided by the rule,

the Bankruptcy Court pointed this out and gave any and all parties the opportunity to object to the

waiver language. (*See* 9/3/2021 Tr. at 59)  The transcript reflects that there was no response. (*See*

*id.*)  On September 3, 2021, the Bankruptcy Court entered the Confirmation Order.

14.     Notwithstanding that September 17, 2021 was the deadline for the confirmed plan to go effective, Allar waited eleven days after the entry of the Confirmation Order – until September 14, 2021 – to seek a stay pending appeal of the Confirmation Order and the Ruling.  (B.D.I. 2619) The Bankruptcy Court held an emergency hearing on Allar's motion for stay pending appeal and, on September 15, 2021, the Bankruptcy Court issued the Stay Opinion, denying it.  The Bankruptcy Court found, among other things, that Allar's failure to introduce any evidence in support of its objection to confirmation was fatal to Allar's effort to show a likelihood of success on the merits. (Stay Opinion at *4)

15.     On September 17, 2021, the Debtors filed the *Notice of Occurrence of Effective Date of (I) Sixth Amended Joint Chapter 11 Plan of Reorganization for MTE Holdings LLC and its Affiliated Debtors; and (II) Bar Dates for Certain Claims* (the "Effective Date Notice").  (*See* D.I. 10-1; B.D.I. 2636)  As noted in the Effective Date Notice, the Plan became effective and was substantially consummated on September 17, 2021 (the "Effective Date").  (*Id.*)  Pursuant to the terms of the Plan, on the Effective Date, the sale of substantially all of the Debtors' assets to Maple Energy Holdings, LLC (the "Buyer") closed and most of the proceeds and remaining assets of the Debtors were transferred to the certain secured creditors, the MTE Litigation Trust, and the MDC Litigation Trust (collectively, the "Litigation Trusts").  Any remaining assets not transferred to those creditors and the Litigation Trusts (i.e., a professional fee reserve to pay fees as required by the Plan, amounts reserved to fund a wind down budget created pursuant to the Plan and Confirmation Order, and an interest in certain amounts placed in escrow pursuant to the Asset Purchase Agreement with the Buyer, which are reserved for the Debtors' secured creditors once the funds come out of escrow) vested in the plan administrator (the "Plan Administrator") on the Effective Date, free and clear of all liens, claims, charges, or other encumbrances.  (*See* Confirmation Order ¶ 27; Plan, Article IV.H.1)

6

16.     That same day – but after the Effective Date Notice was filed – Allar filed the

pending Emergency Stay Motion, seeking a stay of distributions under the Confirmation Order,[2]

even though the Plan had already become effective and distributions had already been made.  (*See*

9/17/2021 Tr. at 7)  The Emergency Stay Motion is fully briefed.  (D.I. 4, 7, 10, 12, 15).

17.     **Jurisdiction.**  Appeals from the Bankruptcy Court to this Court are governed by 28

U.S.C. § 158.  District courts have mandatory jurisdiction to hear appeals "from final judgments,

orders, and decrees."  28 U.S.C. § 158(a)(1).  The Confirmation Order is a final order.

18.     **Applicable standard.**  "The granting of a motion for stay pending appeal is

discretionary with the court."  *In re Trans World Airlines, Inc*., 2001 WL 1820325, at *2-3 (Bankr.

D. Del. Mar. 27, 2001).  When faced with such a motion, the Court must evaluate: (1) whether the

movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the

movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other

interested parties; and (4) where the public interest lies.  *See Republic of Philippines v.*

*Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).  The most critical factors,

according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a

strong showing of the likelihood of success, and (2) that it will suffer irreparable harm, that is, harm

that cannot be prevented or fully rectified by a successful appeal.  *See In re Revel AC, Inc*., 802 F.3d

558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  The Court's analysis

should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the
> merits (significantly better than negligible but not greater than 50%)
> **and** (b) [it] will suffer irreparable harm absent a stay?  If it has, we
> balance the relative harms considering all four factors using a 'sliding
> scale' approach.  However, if the movant does not make the requisite
> showings on either of these first two factors, the inquiry into the

---

[2] The Emergency Stay Motion is not entirely clear as to what Allar is seeking to stay, but the Court
assumes the relief requested is the same as Allar requested in its motion for stay pending appeal
filed in the Bankruptcy Court.

balance of harms and the public interest is unnecessary, and the stay
should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (internal quotation marks and citations omitted).

19.   ***Likelihood of success on the merits.*** As to the first factor, the movant must

demonstrate "a reasonable chance, or probability, of winning." *Id.* The gist of Allar's argument on

this element of the analysis is that the Bankruptcy Court was wrong to treat Allar's "property of the

estate" argument as subsumed within the Bankruptcy Court's prior holding that royalty interest

holders' claims are unsecured. (B.D.I. 2619 at 3-4; D.I. 4 at 7-9) While the Bankruptcy Court

viewed these points as related, it also credited, for purposes of the stay motion, Allar's contention

that issues may be viewed as analytically distinct rather than just "the flip side of the coin." (*See*

Stay Opinion at *4) The Bankruptcy Court found, however, "fair room for disagreement":

> On the one hand, Allar does point to caselaw suggesting that, under
> Texas law, a mineral interest is carved out from the grant conveyed to
> a lessee under an oil and gas lease. *See* D.I. 2620 at 5. On the other,
> as the debtors pointed out, the Texas Supreme Court has also
> explained that where "an oil and gas lease reserves only a royalty
> interest, the lessee acquires title to all of the oil and gas in place, and
> the lessor owns only a possibility of reverter and has the right to
> receive royalties." That would suggest that a royalty holder may
> retain an interest in the lease, but nevertheless hold only a contract
> claim against the lessee to recover unpaid royalties.

Stay Opinion at *4 (citing *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003)).

20.   But "even crediting the contestable legal arguments that Allar is making," the

Bankruptcy Court noted, Allar failed to present any evidence at the confirmation hearing in support

of its ownership argument, which "essentially dooms its likelihood of succeeding on the merits."

*Id.* The Court agrees. Allar's appeal depends on its assertion that the Debtors lack an equitable

interest in the proceeds from the oil and gas sales. Under this line of reasoning, the proceeds

purportedly owed to Allar from oil and gas production would not be part of the estates and instead

would be owned by Allar. But even assuming there is merit to Allar's legal argument, Allar chose

not to present any evidence in support of its argument at the confirmation hearing despite being given opportunities to do so by the Bankruptcy Court.

21. Although Allar concedes it failed to offer any evidence at the confirmation hearing, it argues nonetheless that its "evidence was properly before the [Bankruptcy] Court for consideration." (D.I. 4 at 7) The Court disagrees. The Bankruptcy Court had no evidence before it that Allar had entered into a lease with the Debtors, had not been paid for royalties that were due, and (even arguably) had an ownership interest in certain of the assets that the Debtors claimed as property of the estate.

22. Allar further appears to fault the Debtors for not offering certain documents into evidence. (*See id.*) The record reflects that the Debtors moved several declarations into evidence at the confirmation hearing and admitted the direct testimony of their Chief Restructuring Officer, Scott Davido. *See* Stay Opinion at *2. Although Allar takes issue with the Debtors not offering the Asset Purchase Agreement, the Leases, and the prepetition royalties into evidence (D.I. 4 at 7), there was no requirement that the Debtors do so. The Debtors only had to meet their burden for the elements of confirmation; once they had, as the Bankruptcy Court noted, it was "Allar's burden to demonstrate that the assets that the debtor seeks to sell to a buyer under its plan is not actually property of the estate." Stay Opinion at *4.

23. Without any evidence, Allar cannot show that the approximately $1.25 million in assets for which it seeks to stay distribution can be traced to royalties payable to Allar and are owned by Allar. It appears that Allar also failed establish the amount of unpaid royalties comprising its claim, much less that it has any potential entitlement to $1.25 million.[3]

---

[3] Debtors further argue that Allar is unlikely to succeed on its appeal because the appeal is equitably moot. (*See* D.I. 10 at 13-15) Allar disagrees. (D.I. 14 at 1) The Court need not resolve whether equitable mootness provides another basis to deny Allar's pending motion.

24.     ***Irreparable harm to Allar absent a stay.*** On the second factor, Allar must show that irreparable injury is "'likely,'" not merely possible, in the absence of a stay. *In re Revel AC, Inc.*, 802 F.3d at 569 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Allar must also establish a resulting injury "that cannot be redressed by a legal or equitable remedy." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989).

25.     The Emergency Stay Motion asserts that "[u]sing Allar's property to pay Debtor's creditors violates Allar's Fifth Amendment rights." (D.I. 4 at 19)  Allar further asserts that "the royalties owned by Allar will be lost if a stay is denied because the distributions begin on the September 17, 2021 effective date." (D.I. 7 at 7)  Allar therefore asserts that the stay is necessary in order to prevent the plan from going effective – and, thereby, to prevent distributions to creditors. The plan, however, went effective before Allar even filed its Emergency Stay Motion.  Wires went out, distributions were made.  The harm Allar points to, therefore, will happen even with a stay (as it had already happened before Allar filed its motion).  Moreover, Allar's harm is compensable by monetary damages.  "[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement [unless] the potential economic loss is so great as to threaten the existence of the movant's business." *In re Revel AC*, 802 F.3d at 572.  Allar has not even alleged it can make such showings.

26.     Having failed to satisfy the two most important factors in the stay analysis, the Court need not consider the remaining factors. *See Nken*, 556 U.S. at 434.

27.     **Conclusion.** For the reasons set forth herein, the Emergency Stay Motion (D.I. 4) is DENIED.

January 4, 2022                                    _____
Wilmington, Delaware                      HONORABLE LEONARD P. STARK
                                                            UNITED STATES DISTRICT JUDGE